**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-cv-1134-M |
| $18,592.00 OF $35,037.00 IN UNITED STATES CURRENCY, | § § § § | |
| Defendant *In Rem*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Entry of a Default Judgment of Forfeiture against George David Figaszewski ("Figaszewski"), Julio Velgara ("Velgara"), and Jesus Ramirez ("Ramirez"), filed by the United States of America (the "Government") [Docket Entry #18]. Potential claimants Ramirez and Velgara failed to file a claim or an answer. Figaszewski filed a timely claim, but failed to file an answer. For the reasons set forth below, the Court **GRANTS** the Government's Motion and enters a default judgment against potential claimants Figaszewski, Velgara, and Ramirez, and any and all unknown possible claimants in this action.

I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from the Government's seizure of $35,037.00 during a traffic stop. On or about September 30, 2011, Officer Zachary Beauchamp stopped a GMC Yukon at approximately 1:44 p.m. being driven by Figaszewski, in which Ramirez and Velgara were passengers. *Kutz Aff.* at 2. Beauchamp asked all three men to exit the vehicle during which time

---

[1] The Court accepts the facts alleged by the Government in its Complaint and supporting affidavits as true, as the potential claimants have failed to timely answer. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

he observed Velgara, while exiting, place several blankets on a white box in the back of the vehicle. During his search of the vehicle, to which Figaszewski consented, Beauchamp found $31,980.00 in $20 bills bound in colored rubber bands in the white box located on the floorboard between the two back seats. *Id.* at ¶¶ 5–9. Another officer and his drug detection dog performed an additional search of the vehicle, and the dog aggressively alerted to the presence of a controlled substance in the same white box. *Id.* at ¶ 9. As a result of the dog's alert, Beauchamp concluded that the cash likely had been in the presence of a controlled substance. Two cases of plastic wrap and a case of tape were also found in the trailer attached to the vehicle. *Id.* Beauchamp seized the $31,980.00 as well as $3,057.00 found on Ramirez and Velgara (who individually denied ownership of that money), for a total seizure of $35,037.00. *Id.* at 3. Beauchamp also seized the Yukon driven by Figaszewski. *Id.*

The Drug Enforcement Agency ("DEA") took control of the $35,037.00 shortly after it was seized. *Id.* In a DEA administrative proceeding, Figaszewski filed a claim for $18,592.00 of the seized currency. Figaszewski's claim was supported by copies of several IRS W-2G forms allegedly showing that he won $20,741.40 ($18,590.40 after withholding)[2] from slot machine winnings. He claims those winnings were part of the cash found in the car. *Id.* Because Figaszewski filed a verified claim of ownership to the defendant property with the DEA, the Government is required to bring this action to court.[3] 18 U.S.C. § 983(a)(3)(A); 21 U.S.C. § 881(a).

On April 12, 2012, the Government instituted a civil forfeiture action against the

---

[2] The Court notes the $1.60 discrepancy in the amount which Figaszewski claims he earned from slot machine winnings and the amount the Government seeks to forfeit. Neither party offered an explanation for the discrepancy, but the Court finds this *de minimis* discrepancy irrelevant to its analysis.

[3] Federal law authorizes two types of civil forfeiture proceedings of drug trafficking proceeds: administrative and judicial. If a claim is filed in an administrative proceeding, as it was here, the administrative proceeding ceases and the government must pursue judicial forfeiture instead. *See* 21 U.S.C. § 881(a); *United States v. Robinson*, 434 F.3d 357, 362 (5th Cir. 2005).

$18,592.00 (the "Property") pursuant to 21 U.S.C. § 881. The Complaint does not include a claim against the balance of the $35,037.00 or the other property seized. Notice of the forfeiture action was posted on an official government website (www.forfeiture.gov) beginning April 18, 2012. Docket Entry #8. The Government sent notices of the forfeiture action to potential claimants Figaszewski, Velgara, and Ramirez, via regular and certified U.S. mail [Docket Entry Nos. 6, 9, 10, and 13].[4] On May 17, 2012, the United States Marshals Service arrested the Property pursuant to a warrant of arrest issued by the Clerk. Docket Entry #7.

On May 4, 2012, Figaszewski asserted an interest in the Property by filing with the clerk a verified claim within the sixty day period required by statute [Docket Entry #5]. However, Figaszewski failed to timely file an answer to the Government's Complaint. Neither Ramirez nor Velgara filed any claim or answer in this action. On November 16, 2012, the Clerk entered a default against Figaszewski, Ramirez, and Velgara. On April 30, 2013, in response to an Order directing the Government to take further action, the Government moved for a default judgment against potential claimants Figaszewski, Ramirez, and Velgara, and any and all unknown possible claimants in this action. Docket Entry #18.

## II. JURISDICTION

This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1345 and 1355(a)–(b), which vest district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress." 28 U.S.C. § 1355(a).

## III. ANALYSIS

Section 881(a)(6) of Title 21 of the United States Code provides that all money furnished

---

[4] Three attempts to deliver the notice to Ramirez were returned as undeliverable. Velgara's notice was returned as unclaimed [Docket Entry Nos. 9, 10, and 13].

or intended to be furnished by any person in exchange for a controlled substance is subject to forfeiture to the United States. The procedures governing civil forfeiture actions are set forth in the forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, and the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Supplemental Rule G(4)(a)(iv)(C) provides that, prior to the forfeiture of seized property to the Government, notice of a forfeiture action against such property must be published on an official government website (www.forfeiture.gov) for at least thirty consecutive days. The Government posting notifies the general public that all persons receiving the notice have sixty days from the first date of publication to file a verified claim, and twenty-one days after filing the claim to file an answer or a motion under Federal Rule of Civil Procedure 12. *See Supplemental Rule* G(5). The Government must also provide notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant. *Supplemental Rule* G(4)(b).

Three steps are required to obtain a default judgment: (1) default by the defendant or as in this case, potential claimant; (2) entry of default by the Clerk's office; and (3) a default judgment entered by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed. R. Civ. P 55. A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure or applicable statute. The Clerk will enter a default when the default is established by affidavit or otherwise. After the Clerk's entry of default, a plaintiff may apply to the district court for a judgment based on the default.

   1. <u>The Government Has Proven Probable Cause by a Preponderance of the Evidence for the Forfeiture of the Property.</u>

Before forfeiture can be granted under 21 U.S.C. § 881(a)(6), the government must

show—by a preponderance of the evidence—probable cause that a substantial connection exists between the property to be forfeited and a crime related to controlled substances. *United States v. $364,960.00 in United States Currency*, 661 F.2d 319, 323 (5th Cir. 1981). Probable cause is in turn defined as "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir. 1980).

There are multiple scenarios relevant to determining whether seized money is related to drug trafficking. For example, an alert by a drug detection dog, where a dog is trained to react only to ephemeral by-products of narcotics and not to commonly circulated currency, can establish probable cause. *See United States v. $22,474 in U.S. Currency*, 246 F.3d 1212, 1216 (9th Cir. 2001) (explaining that because it had received more sophisticated training, a narcotics canine would not alert to money unless it had recently been in the proximity of cocaine). Currency found in a place or in a manner not normally used for transporting large amounts of currency also supports an inference of probable cause. *See United States v. $215,300 United States Currency*, 882 F.2d 417, 418–19 (9th Cir. 1989) (concealing of money in jacket, socks, and apron-like cloth supports an inference that the money was drug-related).

Once the government establishes probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence that the money came from an independent, non-drug-related source. *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 90 (5th Cir. 1990). Failure to refute the government's showing of probable cause results in forfeiture. *Id.*

Here, the Government has established a substantial connection between the Property and illegal drug activity. First, Beauchamp discovered the money concealed in a vehicle, and the potential claimants put forth no persuasive explanation as to why the funds were concealed. *See*

*United States v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir. 2004) (en banc) (finding substantial connection when cash was discovered "sealed in a cellophane-type material" and concealed in a backpack, without any legitimate explanation as to why). Moreover, the fact that the vehicle contained substantial amounts of money raises suspicions, in and of itself. *See United States v. $159,880.00 in U.S. Currency, More or Less*, 387 F. Supp. 2d 1000, 1013 (S.D. Iowa 2005) ("Possession of a large amount of cash is 'strong evidence' that the cash is connected with drug activity.") (quoting *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501–02 (8th Cir. 2004)); *United States v. $127, 000 in U.S. Currency*, No. C 11–06605 LB, 2012 WL 2917467, at *12 (N.D. Cal. July 17, 2012) (finding that currency was substantially connected to illegal drug trafficking where there was an extremely large amount of cash bundled in rubber bands, among other things).

Second, a canine trained to detect narcotics alerted to the odor of controlled substances inside the box in which the money was found, which serves as evidence supporting a substantial connection between the money and drug trafficking activities. *See United States v. Three Hundred Sixty–Nine Thousand Nine Hundred Eighty Dollars ($369,980) in U.S. Currency*, 214 F. App'x 432, 434 (5th Cir. 2007) (per curiam) (unpublished) (canine's positive alert during the search of the vehicle was evidence supporting the jury's verdict forfeiting currency).

Third, Figaszewski's behavior during the traffic stop also weighs in favor of finding a substantial connection between the seized money and illegal drug activity. *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004) (extreme or unusual nervousness of the vehicle's driver and passenger throughout the stop, along with other circumstances, were sufficient to create reasonable suspicion of illegal activity sufficient to extend the traffic stop for a dog sniff search). During the traffic stop, Beauchamp observed that Figaszewski appeared nervous, as his hands

were sweaty and shaking. *Kutz Aff.* ¶¶ 6–7. After Figaszewski was asked to step out of the car, Beauchamp noticed his voice was quivering and his hands were shaking even more than before. *Id.* The Court finds these factors contribute to an inference connecting the Property to illegal drug activity.

Fourth, subsequent investigation proved that Figaszewski was sentenced in December 2007 to three years of probation based on two prior counts of possession of a controlled substance. *Id.* at ¶¶ 12–13. The government may use evidence obtained after seizure of the property or after the filing of the complaint and rely on circumstantial proof to establish probable cause that a property is subject to forfeiture. *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (citing *United States v. 7715 Betsy Bruce Lane,* 906 F.2d 110, 113 (4th Cir. 1990)). According to DEA records, passengers Ramirez and Velgara were detained two months prior, on July 20, 2011, in connection with the seizure of $110,635.00 in U.S. Currency, believed to be drug proceeds of a marijuana smuggling organization. *Id.* at ¶ 11. The prior history of the potential claimants also provides support for a finding of probable cause.

Finally, the fact that no potential claimant showed a legitimate source for the entire amount of money seized provides a basis for finding a substantial connection between all the money and illegitimate activity. *See United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (finding that evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income satisfies the burden imposed by the statute). Though Figaszewski claims the sums that form the basis of this action originate from slot machine winnings, he never explained how it was linked to, and why it was bound with, money he did not claim. *See id.*

Taking into account all of the circumstances, including the concealment and amount of

the money, the fact that a canine alerted to narcotics in the box, the driver's demeanor and prior detention of the passenger, and no legitimate explanation for the entire sum, the Court finds the evidence proffered by the Government sufficient to support forfeiture under 21 U.S.C. § 881(a)(6). *See United States v. $49,790 in U.S. Currency*, 763 F. Supp. 2d 1160, 1167 (N.D. Cal. 2010) (finding that currency was substantially connected to illegal drug trafficking where there was a positive dog alert, the claimant had a prior drug conviction, a large amount of currency was placed in vacuum sealed bags, the currency did not come from a legitimate source, and it was mailed in a suspicious manner); *United States v. $127, 000 in U.S. Currency*, No. C 11–06605 LB, 2012 WL 2917467, at *12 (N.D. Cal. July 17, 2012) (finding that currency was substantially connected to illegal drug trafficking where there was an "extremely large amount of cash, [that was] bundl[ed] ... with rubber-bands," the claimant gave "conflicting and incomplete information to the agents," and there was a positive dog alert).

    2.   The Government Rendered Proper Notice to Claimants

The Government followed proper procedures by giving notice to all known parties who might have an interest in the money seized. Despite that, no one filed an answer, and the time for a responsive filing has expired. Also, no one filed an opposition to this Motion. The fact that all attempts to deliver actual notice to Ramirez and Velgara were returned as undeliverable or unclaimed does not violate their due process rights, as general notice was given to the public through the Government's posting on its official website. *U.S. v. $536,039.00 in U.S. Currency*, 760 F. Supp. 575, 577 (S.D. Miss. 1990) (lack of direct notice to potential claimants through mailings does not violate claimants' due process rights if general notice was given through general publication and reasonable efforts were made to mail notice to the potential claimants).

3. The *Lindsey* Factors Weigh in Favor of Granting the Government's Motion for Default Judgment

In *Lindsey v. Prive Corp.*, the Fifth Circuit laid out the factors a district court may consider in determining whether to grant a default judgment: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith, mistake, or excusable negligence; (5) the harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. 161 F.3d 886, 893 (5th Cir. 1998). Considering the record here, the Court finds that a default judgment is warranted.

The potential claimants would not be unduly prejudiced by entry of default judgment as they have had ample opportunity to answer. *See* Docket Entry Nos. 6, 9, 10, and 13. The entry of default judgment for the Plaintiff also would not result in undue harshness to the potential claimants. They had sufficient notice of the applicable deadlines, through direct mailings and the Government's website. If the Court were to refuse to grant default judgment, Plaintiff would be prejudiced—the Government would have to expend further time and effort in an action that has no opposing party. Furthermore, as already discussed, the Court finds persuasive the Government's claim that the money is traceable to, or was used to facilitate, a controlled substances transaction.

Finally, the Court would not feel obligated to set aside a default judgment. A court may set aside an entry of default under Rule 55(c) for "good cause" or under 60(b), for reasons of mistake, surprise, or excusable neglect. Fed. R. Civ. P. 55, 60. In the Fifth Circuit, under either Rule 55(c) or 60(b), courts are to examine three factors: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).

Based upon the facts known to the Court, there is no "good cause" for which it would be obligated to set aside the default if later challenged by any of the potential claimants. Figaszewski obviously knew of the suit, since he made a claim. His default in answering must be deemed willful. Neither Ramirez nor Velgara ever asserted ownership or any interest in the Property. The Government has been in possession of the Property since September 2011, and it provided potential claimants notice and opportunity to claim their funds by following the established procedures. None of the potential claimants followed the requisite procedures to pursue claims, so it is unlikely that a default judgment would later be set aside. Doing so would impair operation of the forfeiture process.

There is also no evidence that any of the potential claimants have a meritorious defense. Although Figaszewski showed he won money gambling, he never explained how it was linked to, and why it was bound with, money he did not claim. None of the potential claimants established that there is a fair probability of success on the merits if the default judgment were to be set aside. *U.S. v. One 1978 Piper Navajo PA-31 Aircraft, etc.*, 748 F.2d 316, 319 (5th Cir. 1984). Because there was no answer, the Government's factual assertions in the Complaint, including that the subject funds are drug proceeds, are admitted. *See* 21 U.S.C. § 881(a)(6). A default judgment is thus appropriate. Without it, the Government may be altogether without recourse.

**IT IS THEREFORE ORDERED, ADJUDGED, and DECREED** as follows:

1. $18,592.00 of $35,037.00 in United States Currency seized on or about September 30, 2011, is hereby forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6). All right, title, and interest in said currency and property is vested in the United States of America.

2. $18,592.00 is hereby deemed forfeited to the Government and referred to the United States Customs Service for disposition in accordance with law and regulations.

**SO ORDERED**.

Date: June 20, 2013.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS